IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM GOODES and DIANA GOODES, | Case No. C 12-1667 SI |
| Plaintiffs, | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| PACIFIC GAS & ELECTRIC COMPANY, *et al.*, | |
| Defendants. | |

Defendant's motion for summary judgment is scheduled for a hearing on April 26, 2013. Pursuant to Civil Local Rule 7-1(b), the Court finds this motion appropriate for resolution without oral argument and hereby VACATES the April 26, 2013 hearing and case management conference. For the reasons set forth in this order, the Court hereby GRANTS defendant's motion.

**BACKGROUND**

On April 4, 2012, plaintiffs William and Diana Goodes filed this lawsuit against defendant Pacific Gas & Electric Company ("PG&E") seeking benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C.A. § 1001 *et seq*. According to the First Amended Complaint ("FAC"), PG&E hired William Goodes as an electrician on April 20, 1981. FAC ¶ 3. After Mr. Goodes suffered an injury on December 12, 1989, he filed a claim for worker's compensation. *Id*. ¶ 4. Mr. Goodes' claim for worker's compensation was accepted and he received worker's

1 compensation until December 1, 1992; on that date, Mr. Goodes began to receive long-term disability
2 benefits ("LTD benefits") under PG&E's Long Term Disability Benefit Plan ("the Plan"). *Id.* ¶¶ 7, 9.
3 Neither party disputes that the Plan is subject to ERISA.

4 The FAC recites that under the Plan, for an employee with five to fifteen years of service,
5 benefits are to be paid for a duration equal to that employee's length of service at the onset of the
6 qualifying injury. *Id.* ¶ 9. The FAC alleges that Mr. Goodes' benefit payments commenced in 1992,
7 and that at the time of his 1989 injury Mr. Goodes had worked at PG&E for approximately eight years.
8 *Id.*¶¶ 4,9. Thus, Mr. Goodes' LTD benefits were to be paid for approximately eight years from 1992.

9 Plaintiffs presently contend that PG&E miscalculated the amount of the long term disability
10 payments to which Mr. Goodes was entitled. At the time that the LTD benefits began, plaintiffs did not
11 follow the Claims and Appeals Procedure provided by the Plan. *Id.* ¶ 13. Plaintiffs state that they have
12 not been represented by an attorney until the present case was filed in 2013. *Id.* ¶ 6. The FAC alleges
13 that PG&E "willfully and deliberately miscalculated" Mr. Goodes' LTD benefits and breached its
14 fiduciary obligations to plaintiffs in violation of ERISA. *Id.* ¶ 19. The complaint does not specify how
15 PG&E miscalculated Mr. Goodes' LTD benefits, stating only that "[w]hen plaintiffs approached
16 defendant for a reconsideration plaintiff [sic - PG&E?] again promised a review that apparently never
17 came." *Id.* ¶ 12. Plaintiffs allege that "[t]he so called claims procedure in this case consists of hundreds
18 of letters back and forth inviting plaintiff to submit new evidence to a new person in defendant's office."
19 *Id.* ¶ 13. Plaintiffs have not submitted any of this correspondence in opposing defendant's motion for
20 summary judgment.

21 Defendant has submitted a letter dated February 8, 1993, from Benefits Representative Karol
22 Renteria to Mr. Goodes, notifying Mr. Goodes of the amount and duration of his LTD benefits. Dkt.
23 70 (Neves Decl. Ex. D).[1] The letter stated, *inter alia*,

---

[1] Plaintiffs have objected to the entire declaration of Allison Neves and the exhibits attached thereto. The Court only addresses these objections to the extent that this order relies on the evidence. Plaintiffs object to the letters attached as Exhibits C-G on numerous grounds. The Court OVERRULES those objections. Ms. Neves, who works in the Human Resources Department of PG&E, states that Exhibits C-G "are true and correct copies of correspondence located in the Plan's LTD file related to

2

> We have reviewed your application for Long Term Disability (LTD) benefits which included associated medical reports. As you know, you were eligible for LTD on June 12, 1990, after being disabled for six months. Until November 30, 1992, your Worker's Compensation Temporary Disability and/or supplemental benefits exceeded the LTD benefits you would have received. Since your Worker's Compensation benefits have ended, we will begin LTD payments retroactive to December 1, 1992.
>
> You received your first LTD check in February. Voluntary Wage Benefit will be deducted from your monthly check through November 1993. After Voluntary Wage Benefit has expired, future LTD check will be $1,341.39, less deductions for any state or federal taxes and future PSEA annual dues. Checks will be mailed to you at the end of each month.
>
> You will be required to provide updated medical information as provided under the LTD Plan and certification of your earnings from all sources while on LTD (we will notify you when this is necessary). Assuming that you continue to qualify, LTD benefits will continue until your pension date on March 1, 1999.
>
> Our records indicate that your claim for Social Security disability benefits has not been ruled upon yet. Please keep us advised about such a ruling since it will affect your future benefit payments. As soon as you receive your "Notice of Social Security Award Certificate" or written notification that you have been denied benefits from Social Security, send a copy to Human Resources.
>
> Enclosed is a breakdown of your LTD benefits. Your LTD benefit is subject to review and audit, and as a result the amount and duration may be altered. If you have any question, please contact me at 545-4767.

Neves Decl. Ex. D. Attached to the letter is a record containing Mr. Goodes' information, relevant dates, physician names, benefit amounts, and dates and amounts of payments. *Id*.

Defendant has also submitted correspondence between Darrel Mitchell, Mr. Goodes' union representative, and Mr. David Bergman of PG&E. In a letter dated November 16, 1998, Mr. Mitchell asked Mr. Bergman to provide Mr. Goodes' dates of birth, hire, end of service, "date LTD began," "dates of LTD payments," and "date LTD entitlement will end and basis for determination." *Id*. Ex.

---

Mr. Goodes." Neves Decl. ¶ 12. The Court finds that defendant has laid a foundation for these exhibits and that they are admissible as business records under Fed. R. Evid. 803(6). *See U-Haul Int'l, Inc. v. Lumbermens Mut. Cas. Co.*, 576 F.3d 1040, 1043 (9th Cir. 2009) (finding admission of data compilations and individual summaries for insurance claims to be proper); *United States v. Childs*, 5 F.3d 1328, 1333 (9th Cir.1993). Further, to the extent the letters are offered to show notice to plaintiffs, they are not offered for the truth of the matter asserted. Ninth Circuit opinions have routinely relied on letters submitted as evidence of notification of benefit determination. *See Wise v. Verizon Commc'ns, Inc.*, 600 F.3d 1180, 1183-84 (9th Cir. 2010) (quoting letter regarding Verizon Claims Review Committee response); *Wetzel v. Lou Ehlers Cadillac Grp. Long Term Disability Ins. Program*, 222 F.3d 643, 646 (9th Cir. 2000) (quoting letter stating final benefit payment date).

F. Mr. Bergman responded in a letter dated November 24, 1998:

> This letter is in response to your inquiry re. Mr. William Goodes and his LTD entitlement. The information you requested is as follows:
> - Date of birth:                May 7, 1941
> - Date of hire:                 Apri120, 1981
> - Last day worked due to illness:   December 12, 1989
> - Date LTD began:               December1,1992
> - Dates of LTD payments:        December 1, 1992 to current
> - Date L TO entitlement will end:   February 3, 1999
>
> Based on Mr. Goodes'[2] hire date and last day worked, Mr. Goodes' credited service is calculated to be 8 years, 7 months and 22 days. Pursuant to Subsection 2.19(e) of the January 1, 1994, Benefit Agreement, Mr. Goodes' duration of LTD benefits is equal to his years of service (8 years, 7 months and 22 days). Mr. Goodes' LTD entitlement will end on February 3, 1999. However, because he is over the age of 55 and has the opportunity to retire effective March 1, 1999, he will receive LTD benefits for the entire month of February rather than a pro-ration based on his actual entitlement.
>
> FORTIS, PG&E's administrator for the LTD Program, will notify Mr. Goodes on December 1, 1998, that his LTD benefits will be ending shortly and that he will be eligible to retire on March 1, 1999, after his LTD benefits expire in February 1999. The Benefits Service Center will send Mr. Goodes a retirement package for his consideration in early January.

*Id*. Ex. C. Mr. Bergman wrote Mr. Mitchell another letter dated December 17, 1998:

> This letter is in response to your follow-up inquiry re. Mr. William Goodes and his LTD entitlement.
>
> Mr. Goodes became eligible for LTD on June 12, 1990, after being disabled for six months. At that time, Mr. Goodes was on Workers' Compensation and remained on the Workers' Compensation payroll until November 30, 1992. Since the Worker's Compensation Temporary Disability and/or Supplemental benefits received by Mr. Goodes until November 30, 1992, exceeded the LTD benefits that he would have received, LTD payments for Mr. Goodes did not begin until December 1, 1992. This was explained to Mr. Goodes by Karol Renteria, PG&E Benefits Representative, in a letter dated February 8, 1993 (attached).
>
> The February 8, 1993 letter also stated "Assuming that you continue to qualify, LTD benefits will continue until your pension date on March 1, 1999." This information was reiterated to Mr. Goodes in subsequent letters sent to him by FORTIS, PG&E's administrator for the LTD Program, in January 1995, June 1995, June 1996, August 1997 and June 1998.

---

[2] Plaintiff's name is misspelled in this letter as "Mr. Goode" throughout after the first sentence; the correct spelling is used in the present Court order.

United States District Court
For the Northern District of California

> Mr. Goodes was notified this month that his LTD benefits will be ending shortly and that he will be eligible to retire on March 1, 1999, after his LTD benefits expire in February 1999.

*Id*. Ex. G.

On March 22, 2013, defendant PG&E moved for summary judgment on three independent grounds. In response to plaintiffs' motion for administrative relief, the Court ordered the motion to be limited to the question of whether plaintiffs' claims are untimely. Dkt. 74.

## LEGAL STANDARD

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *Id*. at 325.

Once the moving party has met its burden, the burden shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" *Id*. at 324 (quoting previous version of Fed.R.Civ.P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id*. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id*. However,

conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir.1979). The evidence the parties present must be admissible. Fed.R.Civ.P. 56(c).

## DISCUSSION

California's statute of limitations for actions on written contracts is four years, and this "provides the applicable statute of limitations for an ERISA cause of action based on a claim for benefits under a written contractual policy in California." *Wetzel v. Lou Ehlers Cadillac Group Long Term Disability Ins. Program*, 222 F.3d 643, 648 (9th Cir. 2000). As for plaintiffs' claim for breach of fiduciary duty, the ERISA statute of limitations is the earlier of:

> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation . . .

29 U.S.C.A. § 1113. The statute of limitations for an ERISA claim "accrues either at the time benefits are actually denied, or when the insured has reason to know that the claim has been denied." *Wetzel*, 222 F.3d at 649 (internal citations omitted). A claimant has "reason to know" under this accrual test when the plan communicates a "clear and continuing repudiation of a claimant's rights under a plan such that the claimant could not have reasonably believed but that his [or her] benefits had been finally denied." *Wise v. Verizon Communications, Inc.*, 600 F.3d 1180, 1188 (9th Cir. 2010) (quoting *Chuck v. Hewlett Packard Co.*, 455 F.3d 1026, 1031 (9th Cir. 2006) (internal quotation marks and citation omitted)).

Defendant contends that plaintiffs had reason to know about the final benefit determination as early as February 8, 1993, the date of the letter to Mr. Goodes from Benefits Representative Karol Renteria stating the final benefit amount that Mr. Goodes would receive under the plan, and informing him that he would not be entitled to further benefits after his pension commenced on March 1, 1999. Dkt. 70 (Neves Decl. Ex. D). Defendant contends that at the very latest, plaintiffs had reason to know

6

of the final determination of benefit amount and duration as of the December 17, 1998 letter from Mr. Bergman to Darrel Mitchell, Mr. Goodes' union representative. *Id*. Ex. G.

In their opposition, plaintiffs argue that the letters submitted by defendant do not "reasonably indicate that Mr. Goodes would not receive further benefits," and that Karol Renteria's letter is "incomplete." Dkt. 75 at 3:2-6. Plaintiffs also assert, confusingly, that Mr. Goodes' benefits were finally denied and the claim accrued only when the defendant filed its motion to dismiss in the present case. Plaintiffs also cite inapposite case law such as *General Motors Corp. v. Romein*, 503 U.S. 181 (1992) (addressing the constitutionality of a 1987 Michigan workers' compensation statute).

The Court concludes that defendant has met its burden of demonstrating that as early as February 8, 1993, and at the very latest, as of December 17, 1998, plaintiffs had reason to know of the final determination of the benefit amount and duration, and thus that plaintiffs' claims are time-barred. The undisputed evidence shows that the Plan repeatedly and consistently told Mr. Goodes and his representatives that Mr. Goodes was not entitled to additional benefits. Mr. Bergman's December 17, 1998 letter states the basis for the calculation and duration of Mr. Goodes' LTD benefits, and states that this information "was reiterated to Mr. Goodes . . . in January 1995, June 1995, June 1996, August 1997 and June 1998." Dkt. 70 (Neves Decl. Ex. G). *See Withrow v. Bache Halsey Stuart Shield, Inc*., 655 F.3d 1032, 1035 (9th Cir. 2012) (holding the plaintiff's claim accrued when "someone in the Reliance Standard Quality Review Unit left a message for her attorney indicating that Reliance was upholding its denial of her claim."); *see also Chuck v. Hewlett Packard Co.*, 455 F.3d 1026, 1038 (9th Cir. 2006). Plaintiffs have not submitted any evidence raising a dispute of fact as to when their claims accrued. Plaintiffs quote only one letter in the FAC, which states that the investigation was ongoing in 1990, *id*., an allegation that is not inconsistent with the 1993 Renteria and 1998 Bergman letters.

///

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby GRANTS the defendant's motion for summary judgment. Dkt. 70.

**IT IS SO ORDERED.**

Dated: April 24, 2013

SUSAN ILLSTON
United States District Judge